WEEKS et al. v. FIRST STATE BANK OF DE KALB. (No. 2030.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 12, 1918.)

**1. CHATTEL MORTGAGES ⬯177(3)—ACTION FOR CONVERSION—BURDEN OF .PROOF—WAIVER.**

In mortgagee's action against purchaser of mortgaged property for conversion, defended on ground that mortgagee had waived lien, where mortgagee proved existence of lien, its registration, and conversion of the property, the burden of proving the waiver of the lien was upon purchaser.

**2. CHATTEL MORTGAGES ⬯136 — WAIVER OF LIEN.**

The fact that mortgagee expected mortgagor to sell mortgaged property and thus secure money with which to pay debt, and that mortgagee knew that mortgagor was selling property, is not in itself sufficient to support finding that mortgagee waived lien.

**3. ESTOPPEL ⬯52—"WAIVER."**

A "waiver" is the intentional relinquishment of a valuable right, and is the result of an agreement between two or more parties sufficient to constitute an estoppel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**4. CHATTEL MORTGAGES ⬯218 — SALE OF PROPERTY—RIGHTS OF MORTGAGOR.**

Mortgagor has the right to sell the incumbered property, subject to the incumbrance.

**5. CHATTEL MORTGAGES ⬯225(1) — SALE OF PROPERTY—RIGHTS OF PURCHASER.**

Purchaser of property, subject to chattel mortgage, who buys property with either actual or constructive notice of mortgage, pays purchase price to the mortgagor at his peril.

**6. CHATTEL MORTGAGES ⬯150(1)—CONSTRUCTIVE NOTICE.**

Mortgagee, having filed mortgage, has the right to assume that purchaser of mortgaged property purchased goods with full knowledge that property was incumbered.

Appeal from Bowie County Court; J. B. Lytal, Judge.

Action by the First State Bank of De Kalb against A. R. Weeks and others. Judgment for plaintiff, and defendants appeal. Affirmed.

King & Estes, of Texarkana, for appellants.

C. A. Wheeler, of Texarkana, for appellee.

HODGES, J. At a former hearing, the judgment in this case was affirmed without a written opinion. In response to an urgent motion for a rehearing, filed by the National Lumber & Creosoting Company, the appellant, we have concluded to give the grounds upon which the affirmance was based. Briefly stated, the facts were, in substance, as follows: In June, 1915, A. R. Weeks became indebted to the appellee, the First State Bank of De Kalb, Tex., and secured that indebtedness by executing a chattel mortgage on 900 cross-ties located on the Cotton Belt Railway right of way at Darden, Tex., 1,100 ties in the woods located in section 4, block 2, in Bowie county, and all the ties to be made by Weeks or under his direction on the land referred to. That mortgage was duly filed for registration as required by law. Thereafter the appellant bought the ties covered by the mortgage, and paid all of the purchase money over to Weeks, except a small balance for which Weeks gave an order to the appellee and which was credited on his indebtedness. At the time the appellant purchased the ties, it had only constructive notice of the existence of the mortgage. This suit was filed by the appellee against the appellant for conversion of ties equal in value to the amount of the debt claimed. The appeal is from a judgment in favor of the appellee based upon an instructed verdict. There appears to be no controversy as to the amount of the judgment being correct if the appellee was entitled to any recovery for conversion of the ties.

[1] The principal defense relied on in the trial court, and insisted on in this appeal, is a waiver of the mortgage lien by the appellee. It is contended that, if the evidence did not conclusively establish that defense, it at least made an issue of fact which should have been submitted to the jury. The existence of the lien and its registration and the conversion of the property having been established, the appellant had the burden of proving that the lien had been waived. For proof of that fact, it relies upon testimony which is, in substance, as follows: C. C. Crump, cashier of the appellee bank, was the agent who conducted the dealings with Weeks. Crump testified that he never consented for the ties to be sold; that nothing had ever been said between him and any of the parties upon that subject; that he knew that Weeks was engaged in the business of selling ties, and

witness expected him to sell these ties. He also admitted that he knew that Weeks was selling the ties to the appellant. Appellant offered in evidence a letter written by Crump in August, 1916, the material portions of which are as follows:

"Referring to our conversation over the phone Saturday in regard to Mr. Weeks' ties, I wish to say in addition to the mortgage claim we have against Mr. Weeks that we are paying for the hauling of the ties as the haulers come in. We have no instructions from Mr. Weeks to do this, but told several haulers that we would see that they got their money for hauling. I would suggest that you deduct your advance to him and send us a check for the balance, if satisfactory to you, as I do not know what the amount of the hauling will be in addition to our mortgage claim of $318.00."

Another letter was written the following month, which was as follows:

"Agreeable to our conversation over the telephone this morning, I herewith hand you a statement against Mr. Weeks for money advanced for making and hauling ties as follows: (Then aggregating several hundred dollars.) Kindly let me hear if the balance due him will justify this claim; if so, I will try to get an order from him to you to pay the amount to us."

[2-6] The utmost that can be said in appellant's favor regarding this and other testimony upon which it relies is that it shows that Crump expected, when the mortgage was taken, that the appellant would purchase the ties from Weeks; that he subsequently ascertained that Weeks was so disposing of them, and made no objection. Assuming that Crump as the cashier of the appellee bank had authority to gratuitously consent that the mortgagor might dispose of the mortgaged property free from the bank's lien, we do not agree to the conclusion that the evidence shows that this was done. The fact that Crump expected Weeks to sell the ties and thus secure the money with which to pay the debt, and that he knew that Weeks was selling them, is not alone sufficient to support a finding that he waived the lien. A "waiver" is the intentional relinquishment of a valuable right, and is the result of an agreement between two or more parties, or of conduct on the part of the lienholder sufficient to constitute an estoppel. Adams v. Paton & Co., 173 S. W. 546; 40 Cyc. 252. It is not contended that the appellant was influenced to purchase the ties by anything that Crump did or said. The record indicates that the appellee bank was located in De Kalb, and that the place of business of the appellant was some miles distant. The evidence also fails to show that the appellant had any actual knowledge of any of the transactions between Crump and Weeks prior to its purchase of the ties. One of its witnesses testified that, just before the letters referred to were received, came the first intimation

they had that the bank had a mortgage upon the ties, and that they bought no more ties and paid Weeks no more money after that time. The failure of the mortgagee to object to a sale of the mortgaged property may, under certain conditions, constitute an estoppel to thereafter assert a lien; but it is not alone to be taken as sufficient evidence to establish an agreement to waive the lien. Sanger v. Magee, 29 Tex. Civ. App. 397, 69 S. W. 234. A mortgagor has the right to sell the incumbered property subject to the incumbrance; and, when the purchaser takes it with either actual or constructive notice of the incumbrance, he pays the purchase price to the mortgagor at his peril. The appellee, having filed its mortgage in the office of the county clerk of Bowie county, had a right to assume that the appellant in dealing with Weeks did so with full knowledge that the property was incumbered. The failure of the appellant to protect itself by seeing that the money was applied on the debt was its own misfortune and one for which the appellee was in no way responsible.

We adhere to the original conclusion affirming this judgment, and the motion for a rehearing is overruled.