**LINCOLN TEN, LTD., Relator,**

v.

**The Honorable Frank O. WHITE, Judge 295th Judicial District Court of Harris County, Texas, Respondent.**

**No. A14–85–585–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 30, 1986.

Harold B. Gold, Dallas, for relator.

John B. Geddie, Houston, for respondent.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is an original mandamus proceeding. Lincoln Ten, LTD, (Lincoln) seeks a writ of mandamus to compel Judge Frank O. White to set aside his order dissolving the distress warrant in *Lincoln Ten, LTD. v. The Wadkins Corporation and Gary B. Wadkins*, pending in the 295th Judicial District Court of Harris County, Texas.

The underlying causes of action are, the breach of a lease agreement, suit on a guaranty and foreclosure of a landlord's lien. Lincoln states that Wadkins is in arrears in its rent payment for leased office space, thus breaching the lease. Lincoln also sued Gary Wadkins individually on his unconditional guaranty of the Wadkins Corporation obligation to pay rent. The third cause of action concerns Lincoln's attempt to foreclose on its statutory landlord's lien. Under this lien, Lincoln has a preference on the property of the Wadkins Corporation for rent that is due and rent that is to become due. *See* Tex.Prop.Code Ann. 54.021 (Vernon 1984). It is an attempt by Lincoln to preserve its rights under this lien, through the auspices of the distress warrant, which brings this Mandamus to this court.

On March 8, 1985, Lincoln filed its original lawsuit in the 295th District Court seeking the above mentioned damages. Near the end of March, 1985, after the filing of the lawsuit, the parties entered into an agreement whereby the proceeds from the sale of certain real estate, owned by Gary Wadkins, would be set aside to

pay the rent owed by Wadkins. The tentative closing date of the real estate sale was March 29, 1985. The sale never took place. Lincoln continued in its demand for payment of rent. On June 3, 1985, Lincoln filed a forcible detainer action in the Justice of the Peace Court for Precinct 5, in Harris County, Texas. In addition to the forcible detainer action it filed an application for a distress warrant.

Judge Till, the Justice of the Peace for Precinct 5, reviewed the documents and concluded that the issuance of a distress warrant was proper. Bond was set at $50,-000.00. The distress warrant was issued on June 12, 1985, and served on Wadkins Corporation on June 14, 1985, but no property was seized by the constable at that time.

Both parties appeared before Judge Till on June 19, 1985, for a jury trial on the forcible detainer action. After a short conference, the parties entered into an agreed judgment of eviction.

On June 22, 1985, Lincoln learned that Wadkins was removing property from the premises without its consent. Lincoln also learned that the distress warrant had not been properly served on Wadkins. The distress warrant was reissued by Judge Till. The constable served the writ on Wadkins and seized its property.

On June 24, 1985, Wadkins filed a motion to dissolve distress warrant in the 295th District Court and a hearing was held on July 24, 1985. The trial court granted the motion to dissolve on July 25, 1985. Lincoln filed its motion for leave to file a petition for writ of mandamus in this court on the same day.

As a general rule, mandamus will not issue to compel the performance of a discretionary act, *Pat Walker Co. v. Johnson*, 623 S.W.2d 306 (Tex.1981), nor will it lie when the court is required to resolve disputed fact issues. *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593, 602 (Tex. 1975). The writ may be granted where it appears that the trial judge has abused his discretion in granting interlocutory orders

where no appeal lies and such orders affect a right that will be destroyed. *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959); *State v. Sewell*, 487 S.W.2d 716 (Tex.1972); *Dresser Industries, Inc. v. Solito*, 668 S.W.2d 893 (Tex.App.—Houston [14th Dist.] 1984, no writ). The issue before us is whether Judge White abused his discretion in dissolving the distress warrant.

The distress warrant was created to give landlords a summary method of enforcing their statutory liens. Its purpose is to provide landlords with "speedy and effective" or "simple and inexpensive" means of preserving a lien until suit to foreclose that lien can be filed and prosecuted to judgment. Soules & Potter, *Distress Warrant and Trial of Rights of Property Under the 1981 Texas Rules*, 12 St. Mary's L.J. 693 (1981). By filing an application for distress warrant, Lincoln was attempting to preserve its statutory lien on the property of Wadkins.

After the property was seized, Wadkins filed a motion to dissolve the distress warrant. The motion heard by the court contained four grounds in support of dissolution. During the hearing an additional ground concerning the constitutionality of the distress warrant was raised. When the motion to dissolve was granted, the order, signed by the court, did not state upon which ground or grounds the court relied. Thus, we will discuss each ground relied on by Wadkins.

It was argued that the procedures for obtaining a distress warrant, as amended, violated the due process clause of the 14th Amendment, in that they deprive individuals of a property right without a hearing. In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) the United States Supreme Court held that prejudgment provisions which deprived one of property without the right to be heard or without the participation of a judicial officer, to be a violation of the due process clause. In order to seize property before final judgment an adversary hearing was mandated.

In *Mitchell v. W.T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) the United States Supreme Court significantly narrowed the scope of *Fuentes*. In *Mitchell*, it was held that property may be seized by an *ex parte* order, without prior notice or opportunity for a hearing, as long as certain safeguards are followed to ensure that due process is afforded all parties. It was noted in *Mitchell*:

> "[T]here is scant support in our cases for the proposition that there must be final judicial determination of the seller's entitlement before the buyer may even be temporarily deprived of possession of the purchased goods. On the contrary, it seems apparent that the seller with his own interest in the disputed merchandise would need to establish in any event only the probability that his case will succeed to warrant the bonded sequestration of the property pending outcome of the suit. *C.f. Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Ewing v. Mytinger Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). The issue at this stage of the proceeding concerns possession pending trial and turns on the existence of the debt, the lien, and the delinquency. These are ordinarily uncomplicated matters that lend themselves to documentary proof; and we think it comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof." 416 U.S., at 609, 94 S.Ct., at 1901.

■ States may enter provisions for prejudgment seizures if such writs are: 1) issued by judicial officers; 2) the affidavits and documents in support of said motion set out the facts relied on and are more than conclusions; 3) the debtor has an immediate right to a hearing; and 4) dissolution of the writ will be granted absent proof at the hearing. *Mitchell, supra.*

Although *Fuentes* and *Mitchell* were concerned with the application of due process protection to consumers, the holdings of these cases are applicable to due process requirements concerning prejudgment seizures in a commercial setting. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Thus, *ex parte* prejudgment seizures, that comply with the requirements of *Mitchell*, do not violate the due process clause of the 14th Amendment. The next question to be addressed is whether the distress warrant and its applicable procedures comply with the requirements of *Mitchell*.

■ The procedural structure for obtaining a distress warrant in Texas is provided for by Tex.R.Civ.P. 610–620. In *Stevenson v. Cullen Center, Inc.*, 525 S.W.2d 731 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ) this court held that the Texas Rules of Civil Procedure relating to distress warrants afforded insufficient consideration of the rights to due process of the tenant. *Id.* at 735. The Rules held unconstitutional in *Stevenson* were repealed effective January 1, 1981. The new Rules were written to conform with the due process requirements of *Fuentes, Mitchell* and *North Georgia Finishing, Inc.* We have found no Texas case addressing the question of whether the new Rules comport with the constitutional safeguards of due process.

We are of the opinion that the new Rules comply with the requirements of *Mitchell.* According to Rule 610, no distress warrant will issue before final judgment except on written order of a justice of the peace. This complies with the requirement that the writ must be issued by a judicial officer. Secondly, the application for distress warrant shall state the grounds for issuing and the specific facts relied upon. Thirdly, as per Rule 614a, the debtor has a right to a judicial hearing no later than 10 days after a motion to dissolve the distress warrant is filed. Finally, the warrant shall be dissolved at such hearing, unless, the applicant proves the specific facts alleged and grounds relied upon for the issuance of the

writ. The distress warrant and its applicable rules are constitutional.

■ Wadkins additionally complained that the distress warrant procedure as applied was unconstitutional since it did not receive an immediate hearing. While the hearing was not held as soon as might be desired, the responsibility for the delay is not easy to assess. The clerk of the trial court was unfamiliar with the right to a mandatory hearing within ten days and was not too cooperative in setting a hearing date. The ancillary judge was not familiar with the distress warrant and felt that it was a matter outside his jurisdiction and would not consider the merits of Wadkins motion. With all these difficulties a hearing date was set for July 1, 1985, which was within the ten day limit. This hearing was passed by Wadkins. The motion was finally heard by the court on July 24, 1985. We feel that Wadkins has waived any right to complain about not being heard within ten days of the filing of its motion since it passed the hearing date set for July 1, 1985.

■ In its motion to dissolve Wadkins raised four points of error. In the first point the complaint is made that the bond filed by Lincoln failed to comply with Rule 611. Rule 611 states that no distress warrant shall issue until a bond is filed with the justice of the peace. The bond was filed on June 12, 1985, and this distress warrant was not issued until after the bond was filed. This point is without merit.

■ The second point relied on by Wadkins was that there was a modification of the lease, and thus, no rent was owed. The evidence relied on by Wadkins shows no such modification. The letter relied on was merely an attempt by Lincoln to guarantee payment of rent owed and was not a modification of the lease. This point is without merit.

■ The third point relied on by Wadkins is that the affidavit filed by Lincoln failed to aver the facts required by Tex.Prop.Code Ann. 54.025. The affidavit filed by Lincoln stated that Wadkins owed rent, the lease has been terminated and that an eviction suit has commenced. Article 54.025 allows for the issuance of a distress warrant when the tenant owes rent, is about to abandon the building or is about to remove the tenant's property from the building. This point is without merit.

■ The final point relied on by Wadkins is that the affidavit filed by Lincoln failed to comply with Tex.Prop.Code Ann. 54.022. Article 54.022 is designed for the landlords benefit and not for the tenant. Its purpose is to ensure the priority of the landlord lien over other creditors of the debtor tenant. See Gunst v. Dallas Trust and Savings Bank, 8 S.W.2d 806 (Tex.Civ.App.—Dallas 1928, no writ); Industrial State Bank v. Oldham, 148 Tex. 126, 221 S.W.2d 912 (1949); Webb v. Bergin, 38 S.W.2d 841 (Tex.Civ.App.—Waco 1931, no writ). This point is without merit.

Since we have found that the points relied on by Wadkins in its motion to dissolve are without merit, the final issue we must resolve is whether there was an abuse of discretion by the trial court. Did Lincoln prove the specific facts alleged and the grounds relied upon for the issuance of the distress warrant? See Tex.R.Civ.P. 614a.

A review of the evidence shows that Lincoln met its burden. Through the testimony of Quentin Leber, Lincoln showed that Wadkins was delinquent in its rent since November of 1984, an agreed order of eviction had been entered into on June 19, 1985, and that Wadkins was removing property on June 22, 1985.

The evidence introduced by Lincoln met the requirement of Article 54.025 and supported the holding of the Justice of the Peace in ordering the distress warrant. The evidence produced by Wadkins did not rebut Lincoln's evidence. The letter agreement relied on by Wadkins as a modification of the lease had no such effect.

We conclude that the trial court abused its discretion in dissolving the distress warrant of Lincoln Ten, LTD.

We anticipate that respondent will proceed in accordance with this opinion. We therefore direct the clerk of this court not to issue the writ unless he fails to do so.

The writ is conditionally granted.